# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

DONNIE NEWBLE,  )
  )
    Plaintiff,  )
  )
VS.  )    No. 05-1050-T
  )
JO ANNE B. BARNHART,  )
Commissioner of Social Security,  )
  )
    Defendant.  )

---

## ORDER AFFIRMING COMMISSIONER'S DECISION

---

Plaintiff, Donnie Newble, filed this action to obtain judicial review of the Defendant

Commissioner's final decision denying his applications for disability insurance benefits under

Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 410 *et seq*, and for supplemental

security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Plaintiff's

applications were filed on September 4, 2002 and were denied both initially and upon

reconsideration by the Social Security Administration (SSA). Plaintiff requested a hearing before

an administrative law judge (ALJ) which was held on September 5, 2003. The ALJ issued a

decision on February 21, 2004, determining that plaintiff was not disabled as defined by the Act

and Social Security Regulations. The Appeals Council denied plaintiff's request for review on

February 4, 2005. Thus, the ALJ's decision became the final decision of the Commissioner of

Social Security. Plaintiff then filed this action asking the court to reverse the ALJ's decision and

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on   7/20/05

award benefits on the grounds that the decision is not supported by substantial evidence in the record. The Commissioner contends that the decision is supported by substantial evidence. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### Standard of Review

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Cutlip v. Sec'y of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Her, 203 F.3d at 389; Drummond, 126 F.3d at 840; Cutlip, 25 F.3d at 286. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. Walters, 127 F.3d at 528 (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip, 25 F.3d at 286. In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997); Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286).

### Background of the Case

Plaintiff is a fifty-five year old male with a high school diploma and thirty-six years of experience as a head cook of a restaurant. (R.397-99). At the time of the administrative hearing, he was fifty-three and alleged disability since September 7, 2001, due to joint pain and stiffness

2

in his shoulders and knees, as well as recurring numbness in his right arm and leg due to diabetes. (R.20-21). He also alleged disability due to depression which causes him sleep disturbance, concentration and memory difficulties, hallucinations, and suicidal thoughts. (R.22). As a result of these infirmities, plaintiff claimed that he could not stand more than fifteen minutes, lift more than ten pounds, or hold a pencil, and that he falls asleep after sitting more than ten minutes. (R.21).

Plaintiff worked as head cook for a restaurant for thirty-six years until he was terminated on September 7, 2001, the day of his alleged onset of disability, after the restaurant changed management. (R.20). Plaintiff claimed he was terminated due to differences with the new management. (R.401). As part of his daily job duties, plaintiff lifted a case of chicken weighing forty to fifty pounds on his own and lifted a fifty-gallon barrel full of water with help from a coworker. (R.399). Plaintiff contended that he is not able to perform this work or any other type of work due to his physical and mental incapacities. (R.403-10).

Plaintiff's physical problems date back to October 1996 when he was first diagnosed with degenerative osteoarthritis and chondromalacia in his right knee by Dr. James Craig  (R.285). Dr. Craig performed successful arthroscopic surgery at that time on plaintiff's knee. (R.285). Although plaintiff complained of stiffness and joint pain in later physical examinations, he admitted that the medication he was prescribed improved these conditions. (R.149, 235).

Plaintiff underwent a consultative examination by Dr. Robert Duck in October 2002. (R.203-05). Dr. Duck observed that plaintiff had an enlarged right knee due to mild osteoarthritis, but showed no signs of difficulty when getting up from his chair and climbing onto the examination table. (R.203-04). Dr. Duck's report also noted that plaintiff performed

3

remarkably well in all physical tests despite a weight of 365 lbs. (R.204). The report concluded that plaintiff could sit, stand, or walk a total of six out of eight hours in a work day and lift up to fifteen pounds frequently and thirty to forty pounds occasionally. (R.205).

Five months later, in March 2003, plaintiff received a functional capacities evaluation from Darleen Cox, a functional assessment specialist. (R.260). Her report concluded that plaintiff could sit a total of eight out of eight hours, stand four out of eight hours, and walk one to two hours out of an eight-hour work day. (R.261).

Plaintiff first received treatment for his mental health in two visits to Pathways of Tennessee, Inc. in September 2001 for symptoms of depression. (R.161-78). He did not return to Pathways again until January 2003, continuing visits until at least July 2003. (R.228, 253). During this time, plaintiff claimed improvement in his depression in April 2003 and maintained in May and July 2003 that he was sleeping better due to medication he was given for depression. (R.251-53).

In October 2002, Dr. John Aday performed a consultative psychological exam on the plaintiff and diagnosed plaintiff with major depressive disorder and alcohol dependence (R.179, 182). Despite the diagnosis, the report found plaintiff's concentration only mildly impaired and asserted that his memory was adequate for most functions. (R.182).

In a visit to Pathways in March 2003, a mental residual functional capacities assessment conducted by Janet Ambler, FNP, concluded that plaintiff had only a "fair" ability to perform in all areas of mental functioning. (R.213-15). However, the assessment was solely based on plaintiff's subjective complaints and not on Ambler's own observations or diagnosis. (R.215).

Regarding plaintiff's alcohol abuse, the record shows some discrepancies in his testimony, both as to the number of drinks consumed daily and as to whether plaintiff has abstained from alcohol and for how long. In September 2001, plaintiff admitted that he drank two to three mixed drinks on the weekend while gambling. (R.164). He admitted in September 2002 that he drank a six-pack of beer daily, then admitted to drinking two or more quarts of beer daily a month later. (R.22, 180). Within weeks of these admissions, plaintiff claimed he only "occasionally drinks alcohol" during a physical examination in October 2002. (R.203). In July 2003, plaintiff told a Pathways employee that he had been abstinent from alcohol since November 2002, despite admitting to still be drinking in January 2003 during a visit to Pathways and being referred to Alcoholics Anonymous in April 2003. (R.233, 251, 253).

The record also shows that, at least at the time of his exam with Dr. Aday in October 2002 and probably beyond, plaintiff was caring for all his personal needs, performing all household chores, driving his car without difficulty, preparing his own meals, shopping for his own groceries, handling his finances, seeing his girlfriend frequently, attending school and studying for an hour each day, and mowing his own yard with a riding lawn mower. (R.181).

On September 5, 2003, plaintiff testified in an administrative hearing before ALJ Sheldon P. Zisook that he suffers pain and stiffness in his shoulders as well as numbness in various joints. (R.404-05). He testified that he was having trouble concentrating without going to sleep in class at school even though he also contended that he couldn't sit still for extended periods in class due to pain and numbness in his joints. (R.405-06). Plaintiff again asserted that he had quit drinking in November 2002 despite reports in the record to the contrary. (R.408). He also stated that he has trouble sleeping and often wakes up groggy in the mornings but never asserted any kind of

sleep disorder. (R.408). Plaintiff claimed to have trouble lifting more than ten pounds and often loses his balance when he lifts ten pounds or more. (R.415). Despite these limitations, plaintiff testified that he independently cares for his personal needs, performs housekeeping chores, grocery shops on his own, and conducts frequent research on his computer. (R.23).

On February 21, 2004, after considering the entire record, the ALJ determined that Plaintiff Newble was not disabled. More specifically, the ALJ found that: (1) plaintiff met the disability insured status requirements of the Act on September 7, 2001, his alleged disability onset date, and he continues to meet them at least through the date of this decision; (2) plaintiff has not engaged in any substantial gainful activity since his alleged disability onset date; (3) plaintiff has impairments that include osteoarthritis, diabetes mellitus, hypertension, morbid obesity, depression, and alcohol dependence, and are considered "severe" by the SSA under its Regulations; (4) plaintiff's medically determinable impairments do not meet or medically equal one of those listed in Appendix 1, Subpart P of Regulations No.4; (5) plaintiff's claims regarding his impairments are not credible in light of the objective medical reports and conclusions contained in the record, the discrepancies in plaintiff's statements about his alcohol abuse, and the plaintiff's own description of his daily activities and active lifestyle; (6) plaintiff has the physical residual physical capacity to perform medium work[1] and the mental residual functional capacity to understand, remember, and execute both simple and detailed job instructions; (7) plaintiff's mental impairments prevent him from performing his past relevant skilled work; (8)

---

[1] Medium work is defined as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday, and sitting intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects. 20 C.F.R. § 404.1567(c), 416.967(c); Social Security Ruling 83-10.

plaintiff's overall residual functional capacity for the full range of medium work is reduced by additional nonexertional limitations which decrease plaintiff's mental capacity; (9) plaintiff is "closely approaching advanced age" as defined in 20 C.F.R. §§ 404.1563 and 416.963; (10) plaintiff has a high school education as defined in 20 C.F.R. §§ 404.1564 and 416.964; (11) plaintiff developed skills in his past relevant skilled work that are transferable to skilled or semi-skilled work functions of other works within his residual functional capacity as defined under 20 C.F.R. §§ 404.1568 and 416.968; (12) A conclusion of "not disabled" is required by Grid Rule 203.23, Table No. 3 of Appendix 2, Subpart P, Regulations No. 4, based on plaintiff's exertional capacity for medium work and age, education, and work background; (13) Despite having additional nonexertional limitations that prevent the plaintiff from performing all of the requirements of medium work, plaintiff can perform and adapt to a significant number of jobs in the national economy; and (14) plaintiff was not disabled as defined by 20 C.F.R. §§ 404.1520(f) and 416.920(f) at any time through the date of the ALJ's decision. (R.25-26).

Six months after the ALJ's decision, plaintiff was diagnosed with severe obstructive sleep apnea syndrome by Dr. R.F. Taylor. (R.379). In that August 2004 evaluation, Dr. Taylor found that the sleep apnea resulted in sleep fragmentation and chronic sleep deprivation for the plaintiff. (R.381). Plaintiff submitted this new evidence to the Appeals Council in October 2004. (R.361).

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity.  42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).  The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden then

shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  42 U.S.C. §§ 423, 1382c; see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  The claimant bears the ultimate burden of establishing an entitlement to benefits.  Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1.  An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2.  An individual who does not have a severe impairment will not be found to be disabled.
3.  A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4.  An individual who can perform work that he or she has done in the past will not be found to be disabled.
5.  If an individual cannot perform his or her past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process.  20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989).

In this case, analysis proceeded to the last step, where the ALJ found that the plaintiff was not disabled because he could perform a significant number of jobs in the medium work range. The plaintiff first contends that the ALJ's finding that plaintiff's residual functional capacity allows him to perform medium work is not supported by substantial evidence because the ALJ allegedly did not accurately read the plaintiff's reports of his daily activities. Instead, the ALJ

chose to take "bits and pieces" from the record to establish his finding and failed to consider all the evidence taken as a whole. Second, plaintiff argues that the ALJ did not develop an adequate record concerning plaintiff's alleged sleep apnea and thus denied him a full and fair hearing by not giving enough weight to this nonexertional impairment. The court must determine if there is substantial evidence in the record to support the ALJ's decision.

1.    The ALJ Accurately Considered All of the Evidence in the Record and Substantial Evidence Supports His Conclusion

Plaintiff alleges that the ALJ erred by selecting certain pieces of evidence to support his finding without considering the evidence as a whole. He alleges this despite the fact that the ALJ specifically stated that his decision was made after all of the evidence was considered. (R.23). Furthermore, the ALJ found that plaintiff's claims regarding his impairments were not credible in light of objective medical reports contained in the record, discrepancies in plaintiff's own statements about his alcohol abuse, and his own description of his daily activities (many of which appeared inconsistent with the alleged impairments). When a claimant alleges fully disabling pain, the "ALJ may distrust [the] claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1182-83 (6th Cir. 1990). In addition, an ALJ may consider household and social activities engaged in by the claimant to determine impairments. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 532 (6th Cir. 1997). In this case, the ALJ was justified in disregarding plaintiff's subjective allegations of his impairments since plaintiff's statements about his lifestyle and the objective medical evidence from Dr. Duck, Darleen Cox, and Dr. Aday

contradict plaintiff's claim of disability.[2] Thus, the court turns to whether substantial evidence supports the ALJ's finding.

The record is replete with evidence supporting the ALJ's decision. Plaintiff was performing his full range of job duties and likely would have continued working had he not been terminated on September 7, 2001, the day of his alleged onset of disability. In fact, plaintiff's testimony at the hearing suggests he was terminated from his job as head cook due to hostilities with management and not due to any disabilities that prevented him from performing his duties. (R.400-01). Moreover, he successfully cared for his personal needs since his alleged onset date and regularly attended a vocational school for over a year. Plaintiff engaged in activities such as mowing his lawn, driving his car, shopping for groceries, attending to all his own housekeeping, studying for class, researching on his computer, and others that tend to show a lack of debilitating physical and mental impairments. The record also contains assessments by Dr. Duck and Darleen Cox that determined the plaintiff can stand or walk six out of eight hours and lift twenty-five pounds frequently and fifty pounds occasionally. A report by Dr. Aday concluded that plaintiff has only mild impairments in his concentration and memory. Though an assessment by Janet Ambler found plaintiff's mental functioning capacity to be "fair" in nearly all areas of mental functioning, her assessment was based solely on the plaintiff's subjective complaints and thus appeared less reliable than Dr. Aday's objective findings. A reasonable mind could accept this evidence as adequate to support the ALJ's decision that the plaintiff has no disability as defined

---

[2] While Janet Ambler's assessment of plaintiff's mental functioning capacity is supportive of plaintiff's alleged disability, the objectivity of the report is questionable since it is based solely on the plaintiff's subjective complaints and not on Ambler's own observations. Therefore, her assessment will not be considered purely "objective medical evidence."

by the Act and was capable of performing medium work. The court therefore finds substantial evidence to support the ALJ's conclusion.

2.    The ALJ Was Not Obligated to Consider the Plaintiff's Sleep Apnea

Plaintiff alleges that the ALJ erred by not developing the record pertaining to plaintiff's sleep apnea and failing to consider this disorder to determine plaintiff's disability status. Prior to and during the hearing plaintiff never alleged disability due to sleep apnea nor offered medical evidence supporting the same. An ALJ does not have a special duty to develop the record in such a case unless the claimant appears at the hearing without being represented by counsel. See Lashley v. Sec'y of Health and Human Serv., 708 F.2d 1048, 1051-52 (6th Cir. 1983); Nabours v. Comm'r, No. 01-6464, 2002 WL 31473794 at *3 (6th Cir. Nov. 4, 2002). Since the Plaintiff Newble was represented by counsel, this special duty is inapplicable and plaintiff's argument is without merit. Furthermore, the Sixth Circuit has repeatedly held that courts may not consider evidence submitted for the first time to the Appeals Council to determine if the ALJ's decision was supported by substantial evidence. See Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001); Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996). Since the plaintiff first alleged sleep apnea and presented medical evidence supporting his allegation to the Appeals Council, the ALJ was justified in making a decision solely on the record before him without considering plaintiff's alleged sleep disorder. See id.; 20 C.F.R. §§ 404.1516, 416.916.

Although plaintiff has not specifically requested it, 42 U.S.C. § 405(g) allows the court to consider this new evidence of sleep apnea for the limited purpose of determining whether or not remand is appropriate. However, such evidence must be material and there must exist good cause for failure to incorporate the evidence into the record at a prior proceeding. See 42 U.S.C. §

11

405(g). In this case, the sleep apnea evidence is immaterial because it does not reveal further information about plaintiff's alleged disability at the time of or prior to the ALJ's decision. See Oliver v. Sec'y of Health and Human Serv., 804 F.2d 964, 966 (6th Cir. 1986). Dr. Taylor's sleep apnea evaluation was conducted in August 2004, six months after the ALJ's decision and nearly a year after the hearing. (R.379). In addition, plaintiff has failed to give a valid reason for not presenting the sleep evaluation prior to the ALJ's decision. See Oliver, 804 F.2d at 966. Therefore, plaintiff has not met the good cause requirement. For these reasons, this case will not be remanded to consider plaintiff's sleep apnea. Pursuant to 20 C.F.R. §§ 404.620(a)(2) and 416.330(b), the plaintiff must file a new claim of disability to have this new evidence considered. See also Sizemore v. Sec'y of Health and Human Serv., 865 F.2d 709, 712.

Conclusion

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

JAMES D. TODD
UNITED STATES DISTRICT JUDGE

15 July 2005
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# **Notice of Distribution**

This notice confirms a copy of the document docketed as number 12 in case 1:05-CV-01050 was distributed by fax, mail, or direct printing on July 20, 2005 to the parties listed.

---

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Joe H. Byrd
BYRD DONAHOE & BYRD
P.O. Box 2764
Jackson, TN 38301--276

Honorable James Todd
US DISTRICT COURT